SAMUEL W. POLLARD and wife *vs.* GRAND TRUNK RAILWAY COMPANY.

*New trial. Verdict.*

A verdict which has no other support than the testimony of a deeply interested party to the suit, in opposition to that of five disinterested, intelligent and unimpeached witnesses, will be regarded as so manifestly against the weight of evidence, that a new trial will be granted.

ON MOTION FOR A NEW TRIAL, upon the ground that the verdict was against the law and the evidence, and the weight of the evidence.

*Wilson & Woodard*, for the plaintiffs.

*Charles P. Stetson and J. W. Emery*, for the defendants.

WALTON, J. A verdict clearly against the weight of evidence should be set aside, and a new trial granted.

A verdict which has no other support than the testimony of a deeply interested party to the suit, in opposition to the positive testimony of five intelligent, unimpeached and disinterested witnesses, called by the other party, must be regarded as clearly, manifestly, against the weight of evidence.

These plaintiffs, (husband and wife) have obtained a verdict for $1300 against the Grand Trunk Railway Company of Canada, for personal injuries received by the wife, while attempting to get on to the defendants' train of cars at Coaticook station in Canada.

The declaration avers that with the consent of the conductor, Mrs. Pollard left the cars at the station named, to surrender a check for a trunk which she wished to leave at that place ; and that notwithstanding such consent, he did not detain the train long enough for her to transact said business, but ordered the passengers

on board so soon that she, in trying to get on board, was thrown down upon the track and injured.

· In support of the action, Mrs. Pollard testified that when the train stopped at Coaticook, she went immediately to the baggage car; that just as she got there, she heard the call "all aboard," and that without stopping to surrender her check, she turned and walked back to the car she had got out of; that just as she took hold of the outside rail of the car, the train started back; that she lost her balance, and swung round, and fell. She says, "I had on a woolen glove, which slipped, so that I fell directly across the track."

She was rescued from her perilous situation by some gentlemen present, so that she received no other injury than some bruises and a sprained ankle.

If this testimony of Mrs. Pollard were uncontradicted, it would be difficult to find enough in it to make the defendants liable for her injury. If it were true, that she had actually reached the steps of the car and taken hold of the rail before the train moved, it would seem as if ordinary care and prudence would have enabled her to reach the platform in safety.

But it is unnecessary to consider this point, for we are satisfied that her account of the transaction is not true. She is contradicted by the two gentlemen who rescued her from her perilous situation, and without whose aid she would probably have been run over and killed, and by three or four other witnesses, in every material particular.

It is proved beyond a reasonable doubt that the train was not standing still when Mrs. Pollard first attempted to get on ; that it was then in motion, and had acquired such a rate of speed as to make it in the highest degree imprudent for her to attempt to get on.

It is also proved beyond a reasonable doubt, that the train stopped at that station for a sufficient length of time to enable her, with the exercise of ordinary diligence, to go to the baggage-car and surrender her check, and return to her seat, without hurrying.

It must also be borne in mind that Mrs. Pollard is a deeply interested witness; that she attempts to support her claim against the railroad company by her own testimony alone; that she is corroborated by no one ; that, on the contrary, she is contradicted in every material particular by every other witness to the transaction; that these witnesses are apparently intelligent, disinterested, and had as good an opportunity to know the truth as she had ; and that it is also shown, by at least two witnesses, that her testimony upon the stand is in conflict with her own account of the transaction given immediately after the accident occurred.

To allow a verdict to stand upon the sole testimony of such a witness, thus contradicted, would be a mockery of justice.

*Motion sustained.*

APPLETON, C. J., CUTTING, DICKERSON and BARROWS, JJ., concurred.

PETERS, J. did not sit, having been of counsel.